...S DISTRICT COURT
...STRICT OF COLUMBIA

Martin A. Armstrong

v.

No: 05-2114 (UNA)

Securities and Exchange Comm'n
et al

A MOTION FOR RECONSIDERATION
OF THE ORDER TRANSFERRING the Petition
AND Recharacterizing IT AS A HABEAS CORPUS

The Plaintiff, Martin A. Armstrong, respectfully moves before this court for reconsideration of its order transferring a Civil Rights Complaint and Petition For Injunctive and Declaratory Relief And For Damages sounding IN Tort. The Plaintiff has filed this complaint in this court AFTER raising these claims that go to the validity of the civil confinement in a Habeas petition in the very district to which this court seeks to transfer this filing only to be denied the right to raise these jurisdictional challenges in a Habeas petition. Citing Maggio v Zeit, 333 US 56 (1948), a civil contemnor may not challenge the jurisdiction of the underlying action in the context of a habeas, see Armstrong v Couccione, 351 FSupp2d 169 (SDNY 2004). Moreover, Armstrong has been denied any right to direct appeal of a civil contempt as being interlocutory lacking Finality under 28 USC § 1291. Therefore, any attempt by this court to recharacterize this civil complaint as a habeas in order to Transfer it to the Southern District of New York ("SDNY") is a denial of the right to petition altogether in violation of the First Amendment. Since the very jurisdictional claims cannot be addressed in a habeas and the SDNY has already so held it lacks jurisdiction to decide the issues presented, this court may not Transfer the complaint upon a Recharacterization basis that has already been litigated and is thus res judicata.

In light of Castro v US, 540 US 375 (2003), any recharacterization of a Civil Filing as a habeas requires (i) notification of an intent to make a

recharacterization, and (2) that this court provide an opportunity to withdraw or amend the petition. The Plaintiff should be permitted to withdraw any request for injunctive relief seeking his release and remain in prison no matter how arbitrary, unlawful, and un-American his non-statutory confinement may be and instead move to the merits of the jurisdictional claims and declaratory judgments.

## Factual Background

The district court held that pursuant to Maggio v Zeit, supra, Armstrong may not raise jurisdictional arguments via a habeas. Furthermore, the Second Circuit court of appeals has denied any right to direct appeal claiming a lack of finality three times! SEC v PEI, 2001 WL 300550 (2d Cir 3/27/01); CFTC v Armstrong, 269 F3d 109 (2d Cir 2001)(motions panel); CFTC v Armstrong, 284 F3d 404 (2d Cir 2001)(per curiam), and SEC v Armstrong, 2004 WL 362318 (2d Cir 2/26/04). Without a direct right to appeal, no challenge to the validity of the underlying jurisdiction may be presented. The Plaintiff is thus in a twilight zone where law no longer functions. As such, any recharacterization of this complaint as a habeas petition would deny outright Armstrong's First Amendment right to petition.

> "[T]he Constitution, which guarantees rights and immunities to the citizen, likewise insures to him the privilege of having those rights and immunities judicially declared and protected when such judicial action is properly invoked"
> Lawrence v State Tax Comm'n Miss, 286 US 276, 282 (1932)

It is beyond dispute that upon this court "rests the obligation to guard and enforce every right secured by the Constitution" Mooney v Holohan, 294 US 103 113 (1935)(per curiam) "and the laws in pursuance thereof" Robb v Connolley, 111 US 624, 637 (1884). American liberty and our democracy cannot exist unless the judiciary is independent and does not "decline the exercise of jurisdiction which is given" Cohen v VA, 19 US 264, 404 (1821). "It is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose

Cort v Ash, 422 US 66 (1975) quoting: J.I. Case Co v Borak, 377 US 426, 433 (1964)

It is imperative to the survival of our nation that "the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the constitution by circuitous and indirect methods" Byars v US, 273 US 28, 32 (1927). Congress has provided statutory rights that the plaintiff is entitled to assert and has established exclusive jurisdiction and venue shall lie in this court - none other. "It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants" Pierson v Ray, 386 US 547, 554 (1967). To deny a right to be heard in THIS court, is to deny equal protection of the law creating a class of one merely because of deference for another judge who is acting in the clear absence of all jurisdiction.

[4] Our cases have recognized successful equal protection claims brought by a 'class of one', where the plaintiff alleges that [s]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"

Village of Willowbrook v Olech, 528 US 562, 145 LEd2d 1060, 1063 (2000) (per curiam)

Whatever deference this court may wish to accord the SDNY, "deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief" Miller-El v Cockrell, 537 US 322, 340 (2003) The SDNY has already declined any right to be heard via habeas on jurisdictional questions and the Second Circuit refuses to acknowledge any right to direct appeal. Thus, not merely does this bar any recharacterization as a habeas, but it bars any ability to transfer a complaint that Congress has expressly held shall be heard in the District of Columbia. Substantive due process alone bars "deliberate decisions of government officials to deprive a person of life, liberty, or property...[and] from the arbitrary exercise of the powers of government" Daniels v Williams, 474 US 327, 331 (1986). No matter how loud the clamors of faction and the plea of the defendants to reject this filing, due process bars such arbitrary action "regardless of the fairness of the procedures used" id/33

a) THE COURT MAY NOT TRANSFER THE PENDING Petition Before It to The SDNY When It Is The Jurisdiction of The SDNY Which Is Challenged

It is Axiomatic that, upon principle, the operation every judgment must depend on the power of the court to render that judgment" Old Wayne Mutual L. Assoc v McDonough, 204 US8, 16 (1907) citing Chief Justice Marshall in Ross v Himely, 8 US 241, 269 (1808). It is "well settled that the jurisdiction of any court exercising authority over a subject may be inquired into in every other court when the proceedings in the former are relied upon and brought before the latter" ibid. [1] "No judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party" id/ 204 US at 15 quoting Scott v McNeal, 154 US 34 (1894); see also Thompson v Whitman, 85 US 457, 469 (1874); D'Arcy v Ketchum, 52 US 165 (1851). "A judgment rendered in viola- tion of due process is void... And is not entitled to Full Faith and Credit elsewhere" World Wide Volkswagen v Woodson, 444 US 286, 291 (1980)

The only exception whereby a inquiry into the jurisdiction of the court to which this court seeks to transfer this action would be barred, requires that such court had fully litigated that jurisdictional question. In Baldwin v Iowa State traveling Men's Assn, 283 US 522 (1931) it was held that Iowa must give binding effect to the judgment of a Federal court in Missouri despite the claim that the original court did not have jurisdiction over the defendant's person. Once it was shown to the court in Iowa that that question had been fully litigated in the Missouri forum, "[p]ublic policy, dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties" id/ Baldwin, 283 US at 525-26.

1) See D'Arcy v Ketchum, 52 US 165 (1851); Knowles v Gaslight & Coke Co, 86 US 58 (1874); Hall v Lanning, 91 US 160 (1875); Cole v Cunningham, 133 US 107 (1890); Grover & Baker Machine Co v Radcliffe, 137 US 287 (1890); Thorman v Frame, 176 US 350 (1900); Bell v Bell, 181 US 175 (1901); Andrews v Andrews, 188 US 14 (1903); National Exchange Bank v Wiley, 195 US 257 (1904); Chicago Life Ins Co v Cherry, 244 US 25 (1917); Valley v Nthrn Fire & Marine Ins Co, 254 US 348 (1920); Gruble v Public Util Com, 281 US 470 (19

In the case at bar, the district court in the SDNY has expressly held that any jurisdictional issues CANNOT be raised in a habeas Forum. Therefore, Armstrong has NOT had an opportunity to fully litigate the issues presented to this court and may raise such claims under 42 USC §1983 which provides for exclusive jurisdiction in the District of Columbia. Moreover, the Second Circuit court of appeals has also held THREE times that it is without jurisdiction to even reach the questions that are presented before this court. Clearly, Armstrong has been denied any full opportunity to challenge the jurisdictional questions in either the Second Circuit or the SDNY and may do so in this Forum.

Furthermore, even IF the SDNY had reached the questions of jurisdiction, the Baldwin holding, which carves an exception to the well-settled doctrine allowing the inquiry into the jurisdiction of any court when the litigant has been denied a full and fair opportunity to litigate the issue, expressly excludes allegations of Fraud. Baldwin forecloses inquiry of fully litigated issues of jurisdiction ONLY "in the absence of Fraud" id/at 525-26. Armstrong has maintained that the defendants did engage in fraud upon the court misleading it as to the nature of the transactions being UNSECURED simple contract borrowings which afford no equity jurisdiction to freeze assets and install a receiver, Grupo Mexicano de Desarrollo, S.A. etal v. Alliance Bond Fund, Inc., 527 US 308 (1999). Even the Second Circuit has recognized that assets may not be frozen in anticipation of even a criminal restitution, US v Razmilovic, 419 F3d 134, 137, 141 (2d Cir 2005). Any pre-judgment freezing of assets is permissible only where there is a secured interest by a creditor. "[T]here must be, in addition to such acknowledged or established debt, an interest in the property or a lien thereon created by contract or by some distinct legal proceeding" Scott v Neely, 140 US 106, 113 (1891). As the Scott v Neely court made clear, an unsecured creditor CANNOT by alleging fraud, acquire the rights of a secured creditor. "[U]nless he has a certain claim upon the property of the debtor, he has no concern with his frauds" id/at 113-114.

The Defendants in The Face of Grupo Mexicano, still ran into court and there obtained a Total seizure and Asset Freeze knowing that the underlying notes were in Fact UNSECURED[2] simple contract borrowings of Japanese yen that were exclusively sold in Japan by registered Japanese Broker-Dealers. There was absolutely no basis to Freeze any such assets in the United States under equity because there was no secured interest by any alleged victim, not merely did Grupo Mexicano expressly preclude equity jurisdiction, but "a creditor who seeks the appointment of receivers must reduce his claim to judgment and exhaust his remedy at law" Shapiro v Wilgus, 287 US 348, 355 (1932). Therefore, clearly a Fraud upon the court has taken place for the Defendants, being government attorneys, are not only duty bound to know the law, but they may not make any material misstatements of law, US v Salemch, 152 F3d 88, 136-137 (2d Cir 1998) and may NOT make material omissions or misstatements of Fact, US v Forlorma, 94 F3d 91, 96 (2d Cir 1996)

The Plaintiff alleges Fraud and Abuse of process, which does not require a favorable Termination of any prior proceedings as an element of a cause of action. Restatement (Second) of Torts §682, Illustration 1 (1977). The Plaintiff also makes it clear in his allegations that the SDNY proceeded in the clear absence of ALL Jurisdiction because it lacked personal jurisdiction over the corporate defendants. Not merely does the district court admit in removing Armstrong's counsel disgorging them RETROACTIVELY no less, that they represented Armstrong personally and not the corporate defendants in a published opinion, SEC v PEI, 84 F.Supp2d 443, 447 (SDNY 2000), but prior counsel, Martin Unger, has submitted an affidavit to that effect. The SEC and CFTC served personal counsel, appointed a receiver, froze all funds, and NEVER allowed the corporate defendant to even make an appearance. It is rudimentary that if a court lacks personal jurisdiction, it has ABSOLUTELY no authority whatsoever to impose an equity

2) Exhibit #1, Criminal complaint of Sept. 13th, 1999 on page 5 states clearly under oath that the private notes alleged to be a Fraud were in Fact unsecured

receivership; see 11A Charles Alan Wright & Arthur R. Miller, Federal Practice § 2491 (2d ed 2004); 65 Am Jur §14 (2003); SEC v Gilbert, 82 FRD 723, 726 (SDNY 1979), 3 W Blackstone, chap 27, p442; Hawthorne v Citicorp Data Sys, 219 FRD 47, 49 (EDNY 2003); Bloom v Democratic Nat'l Comm, 2002 WL 31496272, at *2 (SDNY, 11/6/02)

"It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant" Kulko v Superior Court, 436 US 84, 91 (1978) (citations omitted). Hence, this court may not transfer this civil action to a court that has operated in the clear absence of all jurisdiction. The Supreme Court established the "Clear Absence" standard in Bradley v Fisher, 80 US 335, 352 (1872) discussing judicial immunity holding that it applied only when there was "jurisdiction of both subject and person". Therefore, an absence of personal jurisdiction clearly destroys "All jurisdiction" because the requirements of subject matter and personal jurisdiction are in fact conjunctional. Both subject matter and personal jurisdiction MUST be met before a court has authority to even adjudicate the rights of the parties before it. If the court lacks jurisdiction over a party, it then lacks "All jurisdiction" to adjudicate the issues before it, whether or not the subject matter is properly invoked. Justice White made this point crystal clear where there can be no dispute

"The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties"

Ins Corp Ireland v Compagnie Des Bauxites, 456 US 694, 701 (1982)

"A court does not have the power by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators' Stoll v Gottlieb, 305 US 165, 171 (1938) Because the district court at the behest of the defendants operated in the clear absence of all jurisdiction, it is also

7

beyond question that "the proceedings there were clearly coram non judice."
Kempe's Lessee v Kennedy, 9 US 173, 186 (1809). "Federal courts are not
courts of general jurisdiction; they have only the power that is authorized
by Article III of the Constitution and the statutes enacted by Congress pur-
suant thereto." Bender v Williamsport Area School Dist, 475 US 534, 541 (1986)

"When these Article III limitations are at issue, notions of consent
and waiver cannot be dispositive because the limitations serve
institutional interests that the parties cannot be expected to protect"

CFTC v Schor, 478 US 853, 851 (1986)

The Plaintiff has thus raised vital constitutional claims that include the acts
of the Defendants who have invoked a civil action POST-INDICTMENT which
has obstructed an ongoing criminal case well into its seventh year with no
reasonable likelihood of proceeding to trial anytime soon. Whether the SEC
and CFTC had the authority to even file civil actions post-indictment is a clear
question of due process since a presumption of bad faith attaches such action
by an agency "where a criminal prosecution has been instituted and is pending
at the time of issuance of the summons" Donaldson v US, 400 US 517, 533 (1971);
see also Reisman v Caplin, 375 US 440 (1964); Boren v Tucker, 239 F2d 767, 772-73
(9th Cir 1956); US v O'Connor, 118 FSupp 248 (Mass 1953); US v Powell, 379 US 48, 58
(1964) ("abuse would take place if the summons had been issued for an improper
purpose, such as to settle a collateral dispute, or for any other purpose reflect-
ing on the good faith of the particular investigation"); Abel v US, 362 US 217,
226 (1960) ("the deliberate use by the Government of an administrative warrant
for the purpose of gathering evidence in a criminal case must meet stern resistance
by the courts")

Furthermore, a declaratory judgment is warranted and properly before
this court when it concerns the statutory authority of agencies operating from
the District of Columbia. Clearly, whether the SEC even had any statutory
authority to file a civil complaint AFTER a criminal complaint has been filed

in light of 15 USC §77 (t)(b) and §78u(d)(1) which authorize the transmission of evidence gathered in a civil action to the Attorney General only to "institute the necessary criminal proceedings" — NOT to maintain, further, or aid an ongoing criminal prosecution. It was rejected that the FBI or Attorney General may provide "the SEC with evidence gathered in pursuit of indictments" SEC v Health South Corp, 261 FSupp2d 1298, 1312 n.23 (ND Ala 2003) citing SEC v Dresser Indus., Inc., 628 F2d 1368, 1385 (DC Cir 1980). In US v Scrushy, 366 FSupp2d 1134 (ND Ala 2005), the court dismissed criminal charges of perjury mid-trial when it was discovered that the "SEC had cooperated with the United States Attorney's office in the taking of Mr Scrushy's "deposition pre-indictment id/at 1135. The Scrushy court found that the SEC departed from the proper administration of justice, relying in part on a important case of this district, US v Parrott, 248 FSupp 196, 202 (D. DC 1965) ("the Government may not bring a parallel civil proceeding and avail itself of civil discovery devices to obtain evidence for subsequent criminal prosecution")

Obviously, there are significant questions concerning jurisdiction and even the authority of the SEC and CFTC to have filed civil actions post-indictment and used such actions not merely to remove Armstrong's counsel of choice in the criminal proceeding by demanding a RETROACTIVE disgorgement, which instantaneously created a conflict of interest that is unprecedented and contrary to law clearly established in Grupo Mexicano, supra, see SEC v PEI, 84 FSupp2d 443 (SDNY 2000), but has utilized a judicial officer and sought a perpetual contempt in an effort to demand the very same evidence named in the criminal indictment. Armstrong maintains that this court may not abstain from adjudicating this civil complaint nor may it transfer as a recharacterized Habeas to the SDNY that which cannot be presented via habeas for which it has already been decided there is NO jurisdiction to hear the questions presented to this court.

" There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider Federal Constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a [another] court's determination of those claims. Such a result would be at war with the unqualified terms in which Congress, pursuant to Constitutional authorization, has conferred specific categories of jurisdiction upon the Federal courts, and with the principle that 'When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction ... The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied'"

England v Louisiana Medical Examiners, 375 US 411, 415 (1964)

quoting, Willcox v Consolidated Gas Co, 212 US 19, 40 (1909)

Congress authorized the Civil Right Act and expressly included the District of Columbia. It would be improper for this court to deny Armstrong's due process right to be heard, Grannis v Ordean, 234 US 385, 394 (1914) and his First Amendment right to petition pursuant thereto.

" [W]here irreparable injury may result from a deprivation of property pending final adjudication of the rights of the parties, the Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation or prompt post-deprivation hearing at which some showing of the probable validity of the deprivation must be made."

Commissioner v Shapiro, 424 US 614, 629 (1976)

The Plaintiff previously raised his jurisdictional arguments through counsel in the habeas petition in the SDNY, Armstrong v Guccione, 351 FSupp2d 167 (SDNY 2004) and was denied the ability to seek adjudication in that format. Therefore, denied also any right to direct appeal, the Plaintiff has no other adequate remedies and must pursue his rights at law as established by Congress through 42 USC §§ 1983-1988 and the Declaratory Judgment Act, 28 USC § 2201-2202. Congress has provided for such jurisdiction and venue in this district exclusively. Neither Armstrong nor the corporate defendants, who were Alien, were present in the SDNY. Not even the alleged victims, all being in Japan, were present in the SDNY.

b) Substantive Due Process of Law Prohibits The Application of Any Rule That Causes Injustice And Bars The Arbitrary Denial of Access to the Courts

Rule 1 of The Federal Rules of Civil Procedure makes it explicit that no rule *shall be construed to create injustice that "[t]hey shall be construed and administered to secure the just, speedy, and inexpensive determination of every action". Indeed, the Supreme Court has made it clear that "we look to substance, not to bare form, to determine whether constitutional minimums have been honored" Bell v Burson, 402 US 535, 541 (1971). "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them", Miranda v Arizona, 384 US 436, 490 (1966). "[I]t is always in the power of a court to suspend its own rules, or to except a particular case from their operation, whenever the purposes of justice require it" US v Breitling, 61 US 252, 254 (1858). "[N]o rule of court can enlarge or restrict the jurisdiction of the court, nor can it abrogate or modify the substantive law" Washington So. Nav. Co., v Baltimore & PSB Co, 263 US 629, 635 (1924)

"[A] rule [that] contravenes the statute ... has no force, for the power of a court to make rules necessary is confined to such as are consistent with controlling laws."

Alaska Packers Asso v Pillsbury, 301 US 174, 177 (1937)

"A rule of practice must ~~be~~ Not be allowed for any technical reason to prevail over a constitutional right" Agnello v US, 269 US 20, 34-35 (1925). "[T]he assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice" Davis v Wechsler, 263 US 22, 24 (1923). Therefore, the court should not resort even to any practice or rule to defeat the Plaintiff's right to be heard and petition, knowing that the SDNY and Second Circuit claim no jurisdiction to reach questions of constitutional rights. No rule can work injustice, nor deprive a citizen of any substantive right, Kirby v US, 174 US 47, 64 (1899). For this court to deny Armstrong's right to petition under these circumstances, is to impose a de facto death sentence denying him any right to ever be heard.

11

While it has been firmly settled that "the right of access to the courts is but one aspect of the right of petition" secured by the First Amendment California Motor Transp. Co. v Trucking Unlimited, 404 US 508, 510 (1972); Bertuman v Rieger, 150 F3d 561, 567 (6th Cir 1998), "the right of access to the courts... is [also] founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights" Wolff v Mc Donnell, 418 US 539, 579 (1974) "[T]he right of access to the courts is substantive rather than procedural... [I]t cannot be obstructed, regardless of the procedural means applied" Franco v Kelly, 854 F2d 584, 588-89 (2d Cir 1988) (citations omitted). The Due Process Clause demands that Armstrong be provided with "meaningful access to the courts [which] is the touchstone" Bounds v Smith, 430 US 817, 823 (1977). Armstrong has petitioned this court which is widely held to be the premiere district in the land and seeks the judgment of law, not the flexible liberal constructions in the SDNY that avoid the law to achieve a predetermined end.

> "[T]here are some fundamental principles which are of controlling effect. The right to defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges... allowed to its own citizens".
> Chambers v Baltimore & Ohio RR Co, 207 US 142, 148 (1907)

Armstrong is about to begin his 7th year of imprisonment INDOORS not in a prison - but in a jail. He has been denied meaningful health care and any dental because he is NOT a prisoner of the BOP serving a criminal sentence. For this court to deny access to this court, will strip Armstrong of any meaningful access to the courts whatsoever. The SEC and this same judge in a prior case removed all counsel of a Mr Schiffer using the civil label to create a sacrifice of an unarmed citizen in the arena of government self-interest. Mr Schiffer committed suicide because no one would listen to a pro se citizen. Armstrong pleads as a matter of last resort to for once be heard by an unbiased court under due process

## PRAYER FOR RELIEF

Armstrong prays for this court to reconsider its order recharacterizing the pending civil complaint as a habeas when in fact the relief sought on jurisdictional grounds CANNOT be raised via habeas corpus. Moreover, the complaint seeking civil rights adjudication under 42 USC §1983 et seq. and the DC Human Rights Act, may ONLY be brought in this district and none other. To transfer such a complaint is to deny the right to Petition secured by the First Amendment.

At a minimum, in light of Castro v. US, 540 US 375 (2003), the court should provide the opportunity to withdraw or amend the complaint, removing any request to restore Armstrong's liberty in order to proceed to the merits, including declaratory judgments as to whether the SEC and CFTC possessed statutory authority to institute civil actions AFTER a criminal complaint was already filed. Additionally, Armstrong must be able to challenge the jurisdiction of the SDNY BEFORE any transfer takes place since he CANNOT obtain a right to fully litigate such issues via habeas corpus.

Respectfully Submitted,

dated: November 9th, 2005
New York, New York

Martin A. Armstrong
MCC
#12518050
150 Park Row
NY NY 10007

13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Martin A. Armstrong

                —v—                                                    No: 05-2114 UNA

Securities and Exchange Comm'n
et al

Declaration of Martin A. Armstrong
In Support of Motion For Reconsideration
Of Order To Recharacterize a Civil Complaint As
A Habeas Corpus and to Transfer The Petition To SDNY

I, Martin A. Armstrong, hereby declare under penalty of perjury pursuant to 28 USC §1746 that my counsel appearing in the Habeas Corpus filing in the SDNY raised jurisdictional arguments concerning both the lack of equity jurisdiction in light of Grupo Mexicano v Alliance Bond Fund 527 US 308 (1999) and the lack of personal jurisdiction over the corporate defendants. The district court in its published opinion, Armstrong v Guccione, 351 FSupp2d 169 (SDNY 2004), declined to reach jurisdictional arguments citing Maggio v Zeit, 333 US 56 (1948).

I Further declare under penalty of perjury that the following exhibits are true and correct copies of what I have received in the civil and criminal actions:

Exhibit
  #1  Criminal Complaint of 9/13/99 confirming notes are UNSECURED
        on page 5 thereby confirming the lack of equity jurisdiction
  #2  Published Opinion confirming counsel only represented
        Armstrong personally and not the corporate defendants
        SEC v PEI, 84 FSupp2d 443 (SDNY 2000)

#3    Affidavit of Martin P. Unger (Former Counsel) confirming
        his Representation was exclusively personal to
        Armstrong Thereby demonstrating the lack of
        Personal jurisdiction over The corporate defendants

#4    Published denial of reaching jurisdictional issues
        in the Habeas decision Armstrong v Guccione, 351 FSUPP2d
        169 (SDNY 2004)

#5    Habeas Petition Filed by Counsel of Record in that
        proceeding in The SDNY


                                              Respectfully Submitted


dated: November 9th, 2005
    New York, New York              Martin P. Armstrong
                                              MCC
                                              #12518050
                                              150 Park Row
                                              NY, NY 10007